Next case is number 23-1520, Katrina Parker v. NJ Motor Vehicle Commission. Mr. Roszynski? May it please the Court. I'm Andrew Roszynski, representing the appellant Katrina Parker in this case. I will reserve three minutes for rebuttal. Granted. Thank you, Your Honor. Honorable Judges Hardman, Phipps, and Mabee, and esteemed members of the Third Circuit panel, Court of Appeals, I stand before you to challenge the district court's decision which upheld New Jersey's abrupt revocation of Ms. Parker's passenger and school endorsements. This decision, we contend, stems from the profound misinterpretation of both federal and state laws and overlooks the explicit terms of the waiver that was issued to Ms. Parker. Let me just interrupt you because we don't usually do this. We're usually focused on the legal issues, as you could tell from the prior argument. Yes. But I think the facts here are really important, so can we dive into the facts and correct me if I misstate any of the facts. You got a federal CDL, your client, correct? Yes. And that federal CDL had hearing exemption, correct? Correct. But that hearing exemption prohibited her from driving school passengers, correct? Or interstate commerce. Correct. And under New Jersey law, they never should have issued the certification had they reviewed that exemption and applied it, correct? We would dispute that they should have done that. I'm not saying they shouldn't have as a moral matter. I'm saying under their regulations, they made a mistake when they issued that. Well, we would say that under their regulations, they didn't make a mistake because Katrina Parker passed all of her tests, her road test. She submitted all the documentation that was submitted to her. And in terms of the physical requirements, which they adopted from the federal government per their own laws, it says that someone is physically qualified, whether they meet the physical standards or whether they have an exemption. And Ms. Parker had an exemption. Therefore, she was physically qualified. Well, but her exemption also came with the rider that said no school transportation. And you're saying, well, that was only interstate. But the thing that I don't understand about the case is why. Your client was driving a bus at Rutgers and apparently did so without incident for eight months, correct? Correct. That's intrastate, correct? Intrastate. Right. So why didn't she just go? I'm puzzled as to why she didn't just go to New Jersey and avoid this whole complicating factor with the prohibition on the federal license and just go to New Jersey and say, I've got a hearing-impaired client. She doesn't want to drive interstate. She wants to drive intrastate. And she's capable. She can pass all the tests. She's fine. Why didn't that happen here? And why can't that happen now? So New Jersey says that that can't happen because they will not issue an intrastate-only school bus endorsement to Ms. Katrina Parker because she doesn't meet the hearing requirement. So in the record, and we cite in our briefs, we actually depose them, and the Director of Regulatory Affairs for the state of New Jersey specifically stated in her deposition, if Ms. Katrina Parker applies for an intrastate-only license with PNS endorsements, that they will deny her that because she would not be qualified under state law. And what state law says she's not qualified? Basically, it's sort of a circular argument because they keep on saying, well, we're citing federal medical standards. Right, but it's not state law. State law is just adopting federal. The NJAC looks at the federal. They've got this thing that says, you know, B-11, deaf people can't drive. But then the federal law has an exemption regime associated with it. Correct. But then state law does not have a corresponding exemption regime. Correct. So what they're basically saying is we look to federal law for what boxes you out, but we don't look to federal law for any of the exemptions. Correct. It's a very strange way to say that we're looking to federal law. It's like, you know, cherry-picking of federal law that you want to look at, unless you like. But, you know, then they do so kind of under the rubric of preemption, right? This notion of, look, the federal government's here. We've got a statute that says we can't enforce something that's contrary. You know, that's really interesting to me, though, because a lot of what's done under the federal motor carrier kind of program is spending clause, right? New Jersey gets money. If you put conditions on spending clause, those are just good old-fashioned conditions. That's not preemption. That's not, oh, hey, hey, we want federal law to just move all state law out of the way. That just says you don't meet a condition, you don't get our money. Right. But New Jersey reads that, and they have a basis in statute for reading that, that seems to say Congress says, oh, hey, those normal spending clause conditions, those aren't just conditions. Those are like conditions plus. They're conditions with preemptive force. Well, that's really unusual. But if that's the case, is New Jersey wrong? I mean, it's really unusual. It strikes me as just mind-bendingly unusual. Right, right. But if that is the case, are they wrong? So there are two things. So we actually asked the federal government this because we wanted to depose people from the federal government that allegedly were consulted with by the state of New Jersey. We were blocked. We were blocked by the federal government from doing so. Under TUI regs or something or what? Yeah, they're saying that it would be too disruptive to depose them and that they essentially blocked us. You would have to bring a separate action under probably the Administrative Procedure Act to say that was an irrational decision. We want you to release our person. Exactly. You didn't do that? No. But it is effective in its own way. It has a determined value. Correct. But in doing so, they wrote letters, which are in the record, which says the state of New Jersey can do whatever they want as it pertains to their intrastate commerce. We do not tell them what to do. They are not preempted. We are not requiring them to follow our regulations. They have the full discretion to do what they want. They said that in their letters to them. So we're taking them at their word for that. And there are states like Vermont and Missouri, which have specific pathways for deaf people to get P&S endorsements. Okay, so New Jersey could develop this program, but it hasn't. So, I mean, is it at the end? So it hasn't, but it's a violation of the Americans with Disabilities Act by not doing so. So they're categorically excluding people with disabilities who are qualified to obtain P&S endorsements like Ms. Parker because she passed all the tests, she did all the requirements, and the only thing that's prohibiting her is her disability, that she's deaf. It's sort of a blanket prohibition on reasonable accommodation. Is that what we're dealing with here? Correct, correct. So basically, in page 20 of their brief, they say they're not disputing that Ms. Parker is not qualified or that she can safely transport kids. Your answer is the rules are the rules. Right. Your answer is the rules are violating the ADA. Correct. The rules, them by not exercising their discretion and just arbitrarily boxing themselves in by not having individualized assessments like Vermont and Missouri do, they are violating the ADA. And that's what we're saying. So let me just get back to preemption because I think they're leaning really, really, really heavy into preemption. It's weird. Is preemption ever a defense or does it just help negate elements that you might need to prove as an element? That's a deep question. I'm not sure of the answer to that. But we've got this 29 U.S.C. 13.13.15d that says, during the time period that a waiver exemption or pilot program is in effect, dot, dot, dot, no state shall enforce any law or regulation that conflicts with or is inconsistent with the waiver exemption or pilot program. Correct. So I guess my thought is, do you think that that does, A, have preemptive force here, and B, is what you're asking of New Jersey inconsistent with anything that that says? No, because the terms of the waiver are what control. And interstate is a defined term in the regulation. And intrastate is a defined term in the regulation. Federal regulation, New Jersey defines it differently. They have a, they're all the same to us. Correct. So it's not as though the federal government is saying all states are forbidden from enforcing, you know, people with disabilities to carry passenger and school bus endorsements for interstate and intrastate commerce. It just says for the waiver on itself only talks about interstate. And intrastate is up to the states to decide what they want to do with that. And so on that score, you aren't necessarily saying, like, you aren't praying for injunctive relief or something that New Jersey develop some sort of reasonable accommodation exemption doctrine that's similar to what the federal government has. You just say, hey, if you don't have that, I'm going to sue you at the ADA and probably get my client her job back. That's what you're saying. And so New Jersey never needs to do that. They can leave it as is, all they want, and then just take their chances in litigation. That's your position. Correct. You're absolutely correct on that. The core of our argument is that them by enforcing this in a way that precludes her from driving a bus intrastate violates the ADA because she's a qualified individual with a disability, which is not disputed in this case. And just one point. Judge Hartman opened with questions of fact. And one of the first questions of fact he said is your client has a federal license, a federal CDL. And when I read your complaint, I thought it was a little more nuanced, and you agreed. But when I read your complaint, it suggested that it was a state-issued CDL that then had on top of it, at least if I'm putting it together right, certain federal codes. Is that right? Just to round out the facts, it's state-issued that then has to kind of go through the federal matrix? What's going on there? Sure. So the states are the ones that issue the CDLs, and the states have to issue the CDLs in accordance, if it's for interstate commerce, in accordance with the federal government standards. And so they are to follow the standards. But the P&S endorsements are developed and issued by the states. Every state has different requirements for P&S endorsements. Some have background checks. Some have additional driving requirements. States have the discretion to do as they please as it pertains to passenger and school bus endorsements for each state. So they're the ones that control that process and issue those additional endorsements. And one thing that's interesting here is that the state of New Jersey could have issued a number five restriction on Ms. Katrina Parker's license, which basically what it is is it's a pink attachment to the driver's license. And that could have stated Ms. Parker's P&S endorsements are strictly only valid for intrastate commerce. And if they had done that, that would have been consistent that she is not to do interstate but is allowed to do intrastate. All right. Thank you. We'll hear your rebuttal after we hear from Mr. Ryder. Thank you. May it please the Court and good morning. Brad Ryder, Deputy Attorney General on behalf of the State Defendant Appellees, the New Jersey Motor Vehicle Commission, and its Acting Chief Administrator. Before I get into the substance, I think it would be good to spend a minute to try to explain the technical difference between CDLs, restrictions, endorsements, and exemptions because it's kind of complicated and they can kind of get conflated. So a CDL allows a person to drive a commercial motor vehicle generally. Endorsements expand the type of commercial motor vehicles that a driver can drive. A P endorsement allows you to drive a bus with passengers. An S endorsement allows you to drive a school bus. Restrictions, they place limits on what and where you can drive. In New Jersey, a K restriction on a CDL allows you only to drive within the state and only the state interstate. If there's no K restriction, then it's by default an interstate CDL. An exemption or variance is issued by the Federal Motor Carrier Safety Administration and it exempts a driver from certain physical requirements that they have. And if it's granted, it's subject to, you know, any of the restrictions they put on it. So here, when Ms. Parker presented herself… She got a hearing exemption. She did. And there were limits put on it. There were. No P and S. Right. No driving interstate with passengers. All right. Interstate. Correct. That didn't prohibit her from… That didn't prohibit… That limitation did not prohibit her from driving passengers or school children intrastate. Correct. So the waiver was only valid for an interstate CDL. All right. That gets me back to my original question I asked Mr. Rozinski. Why can't she just show up today and seek only an intrastate CDL, I guess a K license, and say, you know, I want to be free to drive a commercial vehicle intrastate only without prohibiting me from driving school bus or passengers because I've already got a history of proving that I'm quite capable of doing that safely. So she can't get an intrastate CDL with the P and S endorsements because the state of New Jersey has elected not to have a waiver or exemption program. All right. How is that consistent with the ADA? Doesn't the ADA require the state to make an individualized determination as to whether every person whose QID can perform the function with reasonable accommodation or not? Yes, it does. However, under the scheme, under the Federal Motor Carrier Safety Administration and the Motor Carrier Safety Assistance Program, the state agrees to enforce laws that are compatible with the federal law, So compatibility is weird because at two levels. One, the federal government has an exemption scheme. New Jersey doesn't. Two, the intrastate might involve a different set of criteria than interstate. And so if New Jersey wanted to exempt it, they could say, hey, the federal government can do all they want at the intrastate level. So we're making our separate determination within the bounds of our state. And so it seems to me that the compatibility problem is, you know, maybe feigned. So I would disagree with that only because of the way that the federal motor carrier safety regulations are laid out. So they provide that a state law regarding intrastate drivers is compatible and enforceable if it's identical to or has the same effect as the federal regulation. Now, they allow exceptions to the intrastate physical requirements are permitted, but only if the state can show that they are based on sound medical judgment and performance standards that ensure no adverse safety effects. And so doesn't the ADA then kind of say, OK, that's great. You've got to begin to look. It's not just blanket preemption. The answer is there is still a way, even if those regulations have preemptive force, which I don't know I'm sold on because those are the regulations for the administration of the program. And the program is about money. It's not about mandate. So, you know, it's a spending clause program. Like, I'm really stumped. These are conditions on receipt of federal money. These aren't mandates from the federal government. You might lose money. But saying, oh, I'd lose my money is not saying I'm preempted from doing anything in this space. That's just a different inquiry. It's very weird at one level to say, oh, a condition on spending clause is now preempted. Supremacy clause. What do you say? So it's a significant amount of money. And are we going to say coercion here? Are we going to start citing that money? No, no, no. That's not what I'm saying. I'm just saying it's a significant amount of money. It's not just that, you know, like it's money. But it's just, but you understand, it's different. It might not be preemption if it's just a condition on the receipt. It comes from the federal government. But not everything that comes from the federal government triggers supremacy clause if it's just a condition on receipt of federal money. So then New Jersey's in a strange place because they can sit there and say, well, we might lose the money. I guess there's some evidence in the record that says you won't. But you're saying we don't want to because we don't want to take any chances with losing the money. And that puts you in a weird space with respect to the ADA because the ADA says, well, you might not lose your money for the program, but you might incur liability. You're in a bit of a catch-22, but there's also maybe a cleaner path to resolve it after you've got assurances from the federal government that you won't lose your money. What do you say? So I don't necessarily agree that there's assurances from the federal government that we won't lose our money. So in order to meet the standard under the Federal Motor Carrier Safety Administration regulations, that would require the state of New Jersey to do studies, develop standards, hire medical professionals to interpret that. And that's a very large undertaking, as was testified to. So I guess the answer would be you can either do that, or when someone brings an ADA claim, you could settle it. You could do it on a case-by-case basis. You don't have to solve it for everyone at all times. Or you could just sit there and say, okay, we've made a decision not to do all those studies, not to develop a comprehensive program, not to do anything in the ilk of reasonable accommodation. You can make that decision. That's a perfectly fine decision. But when someone shows up and says, hey, the ADA has this whole system of reasonable accommodation, and you aren't even trying to do that, well, they aren't asking you to implement that program. They aren't asking for that injunctive relief. But if you don't do it, it seems it's kind of tricky to avoid liability under the ADA then. No? You don't have to do the program. But when someone comes and says, man, no reasonable accommodation for me, it's weird to say, well, we just didn't want to do the studies. That's just no ADA liability. We don't want to do the studies. I understand your point. But in this case, there was an individual assessment done by the Federal Motor Carrier Safety Administration. Well, they looked at her, at her medical record. They looked at the – or suited to drive passengers or schoolchildren interstate doesn't mean that she wasn't suited to drive passengers or schoolchildren intrastate. So how does a hearing-impaired person go about obtaining a P&S endorsement in New Jersey? They cannot. They can't. Okay, so New Jersey – Is there a reasonable accommodation to be made? So New Jersey's position is if you're hearing-impaired, you will never drive a vehicle that contains passengers or schoolchildren. As long as the Federal Motor Carrier Safety Administration continues granting endorsements as they – it's in the record that should the Federal Motor Carrier – Are you saying that if the Federal regime had said – if the Federal regime had not put the preclusion on P&S, then New Jersey would have allowed her to drive? Absolutely. All right, so you're outsourcing the suitability decision. New Jersey's outsourcing the suitability decision to the Federal regime. So, yeah, the Federal regulations, the Federal Motor Carrier Safety Administration regulations, do not require a state to have an exemption program from the physical qualification standards. They allow it if the state can make a showing. So what the state is elected to do, they don't offer an exemption program for anything. So they rely on the Federal program. So if the Feds had said no P&S endorsement for intrastate, New Jersey would have honored that as well. Correct. All right, but that's not what it said. It said no P&S for interstate. Right. And driving the bus at the Rutgers campus was not interstate. Right. So she wasn't violating the Federal conditions. New Jersey was superimposing a new condition that was not part of the Federal prohibition. Well, the Federal hearing exemption is only valid for an interstate CDL. It's not valid for an intrastate CDL. So because she had an interstate CDL, the state couldn't put P&S endorsements on it. So is that another way of saying that we're only going to allow people to drive commercially in New Jersey to the extent that they are allowed to drive across the country? Basically, yes. All right, but that just seems to be directly inconsistent with the ADA. I'm just imagining cases where, let's say somebody has an attention span that's only three hours. You're not going to let them be a long-haul trucker going across country, right? That would seem obvious. But if you're a good driver and your attention span is three hours, there are a lot of places within New Jersey you could be an effective commercial driver, correct? That is correct, but also New Jersey is a very densely populated state, but it's not a very large state. And you could still be transporting interstate commerce in three hours. Yeah, well, that's the other thing that's confusing, is because if you go from the southern tip to the northern tip of New Jersey, that'll take quite a while. But if you go from northern New Jersey into New York City, it might take half an hour. So this whole distinction between inter- and intrastate on some levels can be rather arbitrary. You can see that, right? Right. So I understand the record. Did Ms. Parker apply for an intrastate CDL? She did not. She received the federal hearing exemption. She came into the NVC to get a CDL, which is what you have to do first before you get the P&S. She was issued that. And then when she came back, after doing the training and everything, to get the P&S endorsements, they were issued. But you made clear that if she tried to get an intrastate CDL with the P&S exemption, that that would be a futile exercise. Right. But is that – I mean, I'm worried about the scope of what's really before us, because I understand that you're making – you're offering interpretations of the law as you see it today, but that's not the case that we have before us. And so I'm just not sure that – can we reach all of these outer limit issues of what would happen if Ms. Parker applied for an intrastate CDL when she hasn't applied for an intrastate CDL? Because it seems like what we have before us is a narrower scope, and we're anticipating what might happen if she were to apply. I understand and appreciate your explication of the laws New Jersey currently sees it, but I'm just not sure if that's the meats and bounds of this present suit. It might be, well, the next suit if this case were decided one way and Ms. Parker seeks to apply for it, and we may be right back at this, but is that presently before the court? I think you are correct, Your Honor, it's not presently before the court. So basically what you're saying is you know what you'd do if she applied for an intrastate CDL with P&S, but she hasn't. And so we can only resolve the cases and controversies before us, and because that's what she wants, we can't really resolve anything related to that. Is that your position? I think that's a position that could be taken. I hadn't thought about it until – Until Jeff Mady thought about it. I hadn't thought about it either until he thought about it. Thank you, Mr. Reier. Thank you very much. We'll hear rebuttal from Mr. Kuczynski. Could I ask you to start with what Judge Mady just said? Because, you know, we're not roving chancellors in equity here. We're deciding cases and controversies consistent with our oaths of office, and even assuming arguendo that New Jersey's scheme may violate the ADA if your client is seeking intrastate CDL, isn't it true that that's not before us? Well, it is before, Your Honors, because even if someone is to drive 99% intrastate and 1% interstate, they have to get an interstate CDL. And the interstate CDL allows that person to drive both interstate and intrastate-only jobs. Ms. Parker had two jobs. She had a job with FedEx, which she did interstate. Oh, okay. And she had her bus that was intrastate. All right, so she needs the interstate CDL. Yes, to do a job with FedEx. All right, well, then it's not just New Jersey's issue. It's a federal issue then. And the interstate authorities have said that she can't get the P&S endorsement, right? Interstate travel only, and that's what she was complying with. So how would that be New Jersey's property? Right. So there's no restriction on what she can do intrastate. And what I'm saying is what New Jersey should have done, if it was so concerned about being inconsistent with the federal regime, is they should have issued a number five restriction on Ms. Parker's license to say, to make utmost clear, she can only drive a bus with school bus passengers intrastate. And if they had done that – But they don't know if that's safe for her to do, though. I mean, they – I mean, I don't know if – the federal decision that she could drive packages for FedEx or UPS or somebody else, but not people, you know, the federal authorities made that decision, right? And I don't know what the rationale there is. I mean, if you're driving packages and you're an unsafe driver because of a disability, you could hurt people just as badly as if the people are in your vehicle, right? Right. So I don't know if you can shed any light on that. Yeah. I mean, the unique thing about this is that she's already proven that she can do it intrastate safely and that she's qualified to do so and she's passed all her tests. And so there are many things that – Well, but that's – I'm not sure that wins the case for you because, you know, you could come up with any number of scenarios where people would be really, really dangerous at flying planes or driving trucks. And because, you know, you took off and landed a few times successfully or what have you, it doesn't mean you've satisfied the qualifications. And here the federal government has said that she can't drive passengers or schoolchildren, right? Interesting. There are plenty of examples where you can do something intrastate, but you can't do it interstate. For instance, using farm equipment, certain farm equipment, or using certain big RV trucks and stuff like that. There are different distinctions that you are allowed to do certain things intrastate versus interstate. And here what we're saying is that without any direction or mandate in which the federal government specifically disclaims that for Ms. Parker's interstate license, that they have no jurisdiction on how they handle what she does intrastate. Right, but that means they don't – their silence about her ability to drive passengers intrastate. Right. Doesn't require New Jersey to allow that to happen. Right, but it requires it under the ADA to happen, and that's the distinction. How do we know that? Because right now we have to decide what stage we're at. We're at the summary judgment stage, where this is thrown out in summary. These are all very fact-intensive issues, and it may be at trial that we go to trial and they raise all these issues before the fact finder in which, oh, we're going to lose federal funding or we're going to do this or that or whatever, but that's not an issue in this case. And there's no mandate from anybody. No one has said the federal government has prohibited Ms. Parker from driving intrastate. So if I hear what you're saying, what you're saying is the problem that we've got at summary judgment is that all New Jersey did was say because the federal government won't let you drive intrastate, we won't let you drive intrastate with P&S. Right. And what you just seemed to say is, you know what, there may be good reasons for that. New Jersey may be able to say, you know, that's just not a reasonable accommodation for us. Just absolutely not. And, I mean, the federal government denies it. So it might not necessarily be crazy for New Jersey to say that's not a reasonable accommodation that we want to deliver either. But what you're saying is the rationale given right now is the denial of intrastate is just good enough for denial of intrastate is wrong as a matter of law. Is that your point? And then they're going to take your chances with whatever proof they want to show to say, hey, look, we love what the federal government did, preeminently reasonable. Everything's right. We want that same lot intrastate. That's a fight for another day. Exactly. And that's what I'm saying is that a jury could determine, a fact finder could determine whether it is inherently unsafe or what did the federal government do to determine what was unsafe intrastate and what are the differences of driving intrastate, intrastate. That all could be a fact finder. What does the summary judgment record say about that as to why the federal government said you can't drive people? They're actually, they did not say any reasons. They didn't say any studies as to why it's unsafe. They just decided when they first, these are cookie cutter endorsements that, this is not like they evaluated Ms. Parker specifically and they said, oh, we see that she has problems driving intrastate with buses and passengers. They just looked at her hearing impairment and said. Correct. And it's like, this is what's on like A127 in the appendix. It's just basically a bullet point list of like, numbered list of seven things just. Right. And this is in the federal register and everyone has the same cookie cutter exemption. And so what we want to do is they can certainly make these arguments at trial, but we're not saying that because the federal government specifically disclaimed this, because the face of the document doesn't say anything about intrastate and that her endorsements allow her to do both, that this is a fight for another day and that let's see, let's flesh out all these factual issues about safety and reasonableness and whether this is a reasonable accommodation or not. Let's get to the fact finder and let's, and from there we can decide with all the facts in front of us whether or not it's a reasonable accommodation. You have to concede, don't you, that they didn't single out deaf people, that their policy is if you don't meet the physical requirements, it could be anything. It could be a myriad of physical requirements. If you don't meet the physical requirements under federal law for a P&S endorsement, then you can't drive passengers in New Jersey. End of story. Well, there are different requirements for different things, but for the hearing exemption, they've stated that many times and even today that they will not have, even for intrastate only, deaf people driving school bus passengers when other states do allow that and have done so successfully without losing federal funding, without killing anybody, without having any safety issues. And so I think that creates, if no other state had ever done this, I think maybe you could finagle a way to say as a matter of law no one's ever done this, but there's states that are doing this successfully and safely and it can be done. Two out of the 50? That's expressly talk about a deaf waiver exemption for intrastate P&S. So there's two ways. You could create a waiver system or you could do it on a case-by-case basis. Right. You've identified two that have a waiver system. You don't know exactly who's in the case-by-case business. We do know there's many states that have the discretion to do this, but don't expressly talk about this. But here the administrator of the Motor Vehicle Commission has the ultimate discretion to issue very specific endorsements on a case-by-case basis. And if they wanted to do it for Ms. Parker, they could do it specifically for Ms. Parker on a one-time basis if they wanted to in this case. They have that discretion to do so, but they're choosing not to exercise that discretion. All right. Thank you, counsel, for both sides. The Court will take the matter under advisement. Thank you, Your Honor.